IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-461-D

| | | |
|---|---|---|
| WANDA FAYE BEST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Wanda Best ("Plaintiff") filed this pro se action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-16] be granted, Defendant's Motion for Judgment on the Pleadings [DE-17] be denied, and the matter be remanded to the Commissioner for further consideration.

## STATEMENT OF THE CASE

Plaintiff protectively filed an application for a period of disability, DIB, and SSI on October 26, 2011 (Tr. 31), alleging disability beginning October 20, 2011 (Tr. 31). The

applications were denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 78-79, 100-01, 168-69.) On October 3, 2013, a hearing was held before Administrative Law Judge Allan T. O'Sullivan ("ALJ"), who issued an unfavorable ruling on November 25, 2013. (Tr. 38, 43.) On June 17, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

**I.     Standard of Review**

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since October 20, 2011. (Tr. 33.) Next, the ALJ determined Plaintiff had the following severe impairments: seizure disorder and essential hypertension. (*Id.*) However, at step three, the ALJ concluded Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 33-34.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found as follows:

> [Claimant can] perform medium work . . . which includes sitting, standing and walking for 6 hours in a typical 8 hour work day and lifting, carrying, pushing and

pulling 25 pounds frequently and 50 pounds occasionally. However, the claimant is limited to only frequently climbing ramps and stairs; occasionally climbing ladders/ropes/scaffolds; and no concentrated exposure to hazards (i.e., heights, heavy machinery, etc.).

(Tr. 34.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 35.) At step four, the ALJ concluded Plaintiff had the RFC to perform the requirements of her past relevant work. (Tr. 38.)

**IV.     Plaintiff's Contentions**

The question before the court is whether substantial evidence supports the agency's decision that Plaintiff is not disabled. Although not entirely clear from Plaintiff's pro se pleadings, it appears as though Plaintiff is making a general assertion that the ALJ's decision is not supported by substantial evidence and is additionally challenging the ALJ's findings with regard to the severity of her impairments, the weight accorded to her neurologist's statements and the weight accorded to decisions of the North Carolina Division of Motor Vehicles and North Carolina Department of Health and Human Services. Plaintiff further requests that the court consider new medical evidence not presented to the agency.

**A.     Severity of Impairments**

The ALJ found that Plaintiff's seizure disorder and essential hypertension are severe impairments but that these impairments do not meet or medically equal the severity of Listings 4.02 and 11.02. To the extent Plaintiff contends that her hyperlipidemia, short-term memory loss and moderate depression are severe impairments, this argument must fail as there is no evidence in the record to indicate that any such impairment significantly limits Plaintiff's ability to perform basic work activities. For the reasons set forth below, however, the undersigned determines that the ALJ committed reversible error with regard to his consideration of Listing 11.02.

4

Case 5:14-cv-00461-D   Document 20   Filed 01/13/16   Page 4 of 13

The burden of proof at step three is on the claimant to show that she meets or equals all the criteria of a listing. *Hunter v. Sullivan*, 993 F.2d 31 (4th Cir. 1992). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish medical equivalence, a claimant must "present medical findings equal in severity to all the criteria" for that listing. *Zebley*, 493 U.S. at 531. "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." SSR 96-6p, 1996 WL 374180, at *3 (Jul. 2, 1996). In determining whether a listing is met or equaled, the ALJ must "consider all evidence in [the claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding. 20 C.F.R. §§ 404.1526(c), 416.926(c).

Where a claimant has a severe impairment and the record contains ample evidence that symptoms related to the impairment "correspond to some or all of the requirements of a listing," it is incumbent upon the ALJ to identify the listing and to compare the claimant's symptoms to each of the listing's requirements. *See Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986). While it may not always be necessary for the ALJ to perform a "step-by-step" analysis of the listing's criteria, the ALJ must evaluate the claimant's symptoms in light of the specified medical criteria and explain his rationale. *Williams v. Astrue,* No. 5:11–CV–409–D, 2012 WL 4321390 (E.D.N.C. Sept. 20, 2012). Where the ALJ fails to make the necessary comparison or fails to explain the basis for his decision other than in a summary or conclusory fashion, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. *Cook,* 783F.2d at 1173; *see also Smith v. Colvin*, No. 7:13-CV-69-FL, 2014 WL 1814302, at *5-6 (E.D.N.C. May 7, 2014)

(remanding where the listing analysis was not supported by the medical evidence of record); *cf. Johnson v. Astrue,* 5:08–CV–515–FL, 2009 WL 3648551, at *2 (E.D.N.C. Nov. 3, 2009) ("Meaningful review may be possible even absent the explicit step-by-step analysis set out in *Cook* where the ALJ discusses in detail the evidence presented and adequately explains his consideration thereof.").

Listing 11.02 concerns the neurological disorder of convulsive epilepsy. 20 C.F.R. § 404, Subpt. P, App. 1, 11.02. To meet the criteria of Listing 11.02, a claimant must produce evidence of "convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena, occurring more frequently than once a month in spite of at least 3 months of prescribed treatment" with either "[d]aytime episodes (loss of consciousness and convulsive seizures)" or "[n]octurnal episodes manifesting residuals which interfere significantly with activity during the day." 20 C.F.R. § 404, Subpt. P, App. 1, 11.02. "Adherence to prescribed antiepileptic therapy can ordinarily be determined from objective clinical findings in the report of the physician currently providing treatment for epilepsy." 20 C.F.R. 20 C.F.R. § 404, Subpt. P, App. 1, 11.00. Additionally, "blood levels of . . . antiepileptic drugs may serve to indicate whether the prescribed medication is being taken," and "evaluation of the severity of the impairment must include consideration of the serum drug levels" "[w]hen seizures are occurring at the frequency stated in 11.02." 20 C.F.R. § 404, Subpt. P, App. 1, 11.00.

Plaintiff's symptoms appear to correspond to at least some of the requirements of Listing 11.02. The medical evidence of record establishes that Plaintiff has "long-standing and refractory seizure disorder with breakthrough seizures," which dates back to 1990 when Plaintiff experienced five grand mal seizures in the emergency department of Wilson Memorial Hospital. (Tr. 564.) During the time period relevant to this action, Plaintiff has been treated for her seizure disorder by

6

Case 5:14-cv-00461-D   Document 20   Filed 01/13/16   Page 6 of 13

Dr. Donald Price, a board-certified neurologist with East Carolina Neurology, and Dr. Gonzalo Cabral, a family medicine physician with Wilson Community Health Center. On January 10, 2013, Dr. Price indicated that Plaintiff had continued to experience seizures despite adherence to three prescribed anti-convulsants. (Tr. 419-20.) It is noted that Plaintiff had two seizures on January 3, 2013, and that blood test results from that day showed therapeutically adequate drug serum levels. (Tr. 450-52.) On June 11, 2013, Dr. Price reported to Plaintiff's primary care physician, Dr. Cabral, that Plaintiff "continues to have seizures occurring about 2 times per month." (Tr. 491.) Other treatment notes similarly indicate that Plaintiff has experienced seizures despite her compliance with prescribed medications. (*See, e.g.*, Tr. 385, 421, 423, 433, 442, 449, 446-47).

Notwithstanding such evidence, the ALJ failed to address whether Plaintiff's seizure disorder met or was medically equivalent to the specific criteria of Listing 11.02. Instead, the ALJ summarily dismissed Listing 11.02, stating:

> The undersigned has considered medical listings 4.02 and 11.02 in evaluating the claimant's physical impairments. The medical evidence does not document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of the listed impairments, individually or in combination.

(Tr. 33-34.)

In connection with a prior application for social security benefits, it was determined that Plaintiff did not meet Listing 11.02 as of October 19, 2011, because "the longitudinal medical evidence of record does not establish that her seizures occur at the frequency and pattern contemplated by the listing." (Tr. 67.) However, the ALJ in this case does not appear to have conducted a similar review of Plaintiff's more recent medical record, which suggests that Plaintiff is experiencing seizures as frequently as two times per month and specifically notes seizures on the

7

Case 5:14-cv-00461-D   Document 20   Filed 01/13/16   Page 7 of 13

following dates during the relevant time period: November or December of 2011; January 15, 2012; February 29, 2012; March 15, 2012; March 26, 2012; at least four seizures between March 26, 2012, and May 17, 2012; June 1, 2012; August 3 or 5, 2012; October 15, 2012; two seizures on January 3, 2013; May 14, 2013; and October 30 or 31, 2013. (Tr. 351, 366-74, 375, 391, 385, 419-20, 421, 423, 433, 441, 442, 446-47, 449.) Treatment notes indicate that Plaintiff has experienced headaches (*see, e.g.*, Tr. 419-20), difficulty with concentration and short-term memory loss (*see, e.g.*, Tr. 422, 424), and loss of consciousness (*see, e.g.*, Tr. 446) as a result of her seizures. On June 11, 2013, Dr. Price wrote a letter "To Whom It May Concern" stating that Plaintiff has "refractory epilepsy and is on 3 anticonvulsants without adequate control of her seizures. This has made it impossible for her to drive and has made it impossible for her to work."[1] (Tr. 425.)

Although the ALJ gave great weight to the prior administrative decision denying benefits, any reliance on that decision for purposes of determining whether Plaintiff's impairments meet or equal the listings during the relevant period is misplaced. In the prior decision, the ALJ found that Plaintiff had experienced three or four seizures from 2006 to 2009 as a result of her noncompliance with medications and had "sporadic" seizure activity in 2009 and 2010 "associated with stress and/or missing her medication." (Tr. 69.) He determined that "[h]er seizures were consistently characterized as under control when she was compliant with her prescribed treatment" and that her continued driving indicated "she was not as concerned about the severity or frequency of potential seizures" as she claimed. (Tr. 69.)

---

[1] Dr. Price's opinion that Plaintiff is unable to work is a matter reserved to the Commissioner and is, therefore, entitled to no deference. *Parker v. Astrue*, 792 F. Supp. 2d 886, 894 (citing 20 C.F.R. § 404.1527(e)(1)).

8

Case 5:14-cv-00461-D   Document 20   Filed 01/13/16   Page 8 of 13

In contrast, the medical evidence concerning the time period at issue here indicates Plaintiff has been experiencing seizures with increased frequency despite her compliance with prescribed anticonvulsant medications. Both Dr. Price and Dr. Carbal describe Plaintiff's seizures as "refractory" or "intractable," meaning that they are not controlled by medication. (*See, e.g.*, Tr. 350-51, 353, 357, 385, 391.415, 418, 420, 422, 424-25, 442, 449, 470, 512.) While the ALJ reported three seizures when Plaintiff was said to have been noncompliant with her medication (March 23, 2011, August 17, 2011, and December 12, 2011), all but the December 2011 seizure occurred prior to the relevant time period. Moreover, the ALJ only incorporated one of the fifteen to twenty other seizures reported within the medical record of which there are statements that Plaintiff was compliant with her medications. (Tr. 366, 373, 378, 390, 391, 404, 415, 419, 421, 423, 433, 442, 446, 449, 470.) On the dates that the ALJ states Plaintiff had normal neurological exams (May 17, 2012, August 30, 2012, February 26, 2013, May 23, 2013, and June 11, 2013), he failed to also report that Plaintiff suffered seizures before each of these medical visits. (Tr. 415, 423, 421, 433, 470.) Lastly, the ALJ relies upon Plaintiff's negative CT scans to discount her memory complaints, as well as Dr. Price's opinions. However, he fails to consider the impact of Plaintiff's mesial temporal sclerosis,[2] which was noted on CNS imaging.

The ALJ's cursory discussion of Listing 11.02 suggests the absence of all criteria, but such a finding is not supported by the medical evidence of record. Because the ALJ failed to discuss whether Plaintiff's seizure disorder meets the specific criteria of Listing 11.02, "it is simply impossible to tell whether there was substantial evidence to support the [ALJ's] determination."

---

[2] Mesial temporal sclerosis is scarring of the inner portions of the temporal lobe and "may be caused by oxygen starvation to the brain, head trauma, or brain infection, but can also occur without apparent cause." Johns Hopkins Medicine: Neurology and Neurosurgery, http://www.hopkinsmedicine.org/neurology_neurosurgery/centers_clinics/epilepsy/seizures/causes/mesial_temporal_sclerosis.html (last visited Dec. 4, 2015).

*Cook*, 783 F.2d at 1173. Moreover, substantial evidence does not support the ALJ's findings that Plaintiff's "medical condition has not deteriorated" and that "[t]reatment notes . . . show a history of well controlled seizures on medication," with seizures occurring only in the context of Plaintiff's noncompliance with medication (Tr. 37). Accordingly, the agency's decision should be reversed and this matter should be remanded to the Commissioner for further proceedings.

B.  Other Agency Decisions

Plaintiff also contends that the ALJ failed to give due consideration to a North Carolina Division of Motor Vehicles' decision revoking her driving privileges due to her seizure disorder and a North Carolina Department of Health and Human Services' decision approving her Medicaid application. The final responsibility for determining whether an individual is disabled under the Social Security Act is reserved to the Commissioner. Thus, disability decisions by other governmental agencies are not binding on the Commissioner. *Alexander v. Astrue*, No. 5:09-CV-432-FL, 2010 WL 4668312, at *2-3 (E.D.N.C. Nov. 5, 2010); 20 C.F.R. § 404.1504. Nevertheless, such decisions are evidence. *Alexander*, 2010 WL 4668312, at *2; 20 C.F.R. § 404.1512(b)(5). In making a disability determination, the Commissioner must evaluate and give due consideration to all evidence that is presented in support of an individual's case, including disability decisions of other agencies. SSR 06-3p, 2006 WL 2329939, at *6 (Aug. 9, 2006).

In this case, there is evidence in the record that Plaintiff was approved for Medicaid assistance and that Plaintiff's driving privileges had been revoked or suspended. However, neither of the agencies' decisions nor the bases underlying their decisions were offered into evidence. Furthermore, the Medicaid decision was offered into evidence in the administrative proceeding concerning Plaintiff's prior applications for social security benefits and was given no credence. Accordingly, the ALJ did not err by failing to consider these decisions.

## C. New Medical Evidence

Plaintiff requests that the court consider medical records concerning treatment received by her from July 2014 to February 2015 in relation to her seizure disorder. In determining whether an ALJ's decision is supported by substantial evidence, the court's review is limited to that evidence presented to the ALJ. *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963)). Nevertheless, a court may remand a social security case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff has not shown that the evidence she submitted is relevant to the time period of the alleged disability date of October 20, 2011, through the date of the ALJ's decision on November 25, 2013. Consequently, this information does not constitute new and material evidence warranting remand pursuant to sentence six.

## D. Residual Functional Capacity

An RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as

consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

In this case, there are a number of inconsistencies between the ALJ's findings and the evidence of record. As explained in more detail above, substantial evidence does not support the ALJ's findings that Plaintiff's medical condition has not worsened and that Plaintiff's seizures are well controlled with medication. The ALJ's RFC determination is also inconsistent with the prior administrative decision upon which the ALJ purportedly placed great weight.[3] These issues bear directly upon the ALJ's RFC determination and should, therefore, be given further consideration upon remand.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-16] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-17] be DENIED, and the case be REMANDED to the Commissioner for further consideration.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 1, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed.

---

[3] In the prior administrative decision, the ALJ found that Plaintiff "should not have to perform balancing or climbing, work at heights or around dangerous machinery, or be required to drive a motor vehicle" due to the possibility of seizure activity. (Tr. 66.) The ALJ in this case found that Plaintiff is capable of "frequently climbing ramps and stairs [and] occasionally climbing ladders/ropes/scaffolds" but should have "no concentrated exposure to hazards (i.e., heights, heavy machinery, etc.)." (Tr. 34.)

R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 13th day of January 2016.

KIMBERLY A. SWANK
United States Magistrate Judge